1   BRANDON M. TESSER (SBN 168476)
        (btesser@trgllp.com)
2   BRIAN M. GROSSMAN (SBN 166681)
        (bgrossman@trgllp.com)
3   TESSER RUTTENBERG & GROSSMAN LLP
    12100 Wilshire Boulevard, Suite 220
4   Los Angeles, California 90025
    Telephone:   (310) 207-4022
5   Facsimile:    (310) 207-4033

6   Attorneys for Plaintiff
    ELOHIM EPF USA, INC.

7

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  ELOHIM EPF USA, INC., a              )  Case No.: 2:16-cv-7796
    California Corporation,              )
13                                       )
                Plaintiff,               )  COMPLAINT FOR
14                                       )
          vs.                            )  1.   DIRECT COPYRIGHT
15                                       )       INFRINGEMENT;
    TWITTERLAND, INC., a California      )
16  Corporation d/b/a CAFÉ BLISS;        )  2.   CONTRIBUTORY
    JOON YI, an individual; KOIN         )       COPYRIGHT
17  ENTERPRISES, INC., a California      )       INFRINGEMENT;
    Corporation d/b/a OCTAVE 18;         )
18  SOOHEUM HAN, an individual; GO       )  3.   VICARIOUS COPYRIGHT
    GOO RYEO RESTAURANT, INC., a         )       INFRINGEMENT;
19  California Corporation d/b/a CLUB     )
    ZEUS; STELLA S. JUN, an              )  4.   INDUCING COPYRIGHT
20  individual; MH & MK                  )       INFRINGEMENT
    ENTERTAINMENT, INC., a               )
21  California Corporation d/b/a         )
    CHERBOURG; MYUNG HO LEE, an          )  JURY DEMAND
22  individual; WOON SOOK CHUNG,         )
    an individual d/b/a SENSE            )
23  RESTAURANT; SAN CHUN, INC. a         )
    California Corporation d/b/a GO      )
24  HYANG SAN CHUN; MOON PARK            )
    YONG, an individual; KONEOUSA,       )
25  INC., a California Corporation d/b/a  )
    STAR KARAOKE; ERICA J. KANG,         )
26  an individual; IWAN, INC., a         )
    California Corporation d/b/a ASTRO   )
27  KARAOKE; SANAE MARUYAMA,             )
    an individual; SUGAR K               )
28  ENTERTAINMENT, INC., a               )
    California Corporation d/b/a SUGAR   )

                         COMPLAINT

1  ENTERTAINMENT; SMITH HO
    KANG, an individual; ZILLER
2  ENTERPRISES, INC., a California
    Corporation d/b/a ZILLER
3  KARAOKE; BYUNGGON SEO, an
    individual; JIA ZEN, INC., a
4  California Corporation d/b/a SIMPLE
    KARAOKE; DONG SOO CHO, an
5  individual;and DOES 1 through 20,
    inclusive

6

           Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

Plaintiff Elohim EPF, USA, Inc. alleges as follows:

# I

## JURISDICTION

1.     This court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. § 1331, more particularly, because it arises under an Act of Congress relating to copyrights, 28 U.S.C. § 1338, namely, the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*

# II

## VENUE

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(a), in that all of the defendants, or their agents, reside or may be found in the district.

3.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that either: (1) one or more defendants reside in this district, and all defendants reside in this state; (2) a substantial part of the events or omissions giving rise to the claim occurred in this district; or (3) at least one defendant resides in this district, if there is no district in which the action may otherwise be brought.

# III

## PARTIES

4.     Plaintiff ELOHIM EPF USA, INC. ("Elohim") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Diamond Bar, California.  Elohim is the United States sub-publisher for a substantial number of music publishers in the Republic of Korea ("Korea") and, as such, controls the right to license compositions for those publishers in the United States.

*///*

5.     Defendant TWITTERLAND, INC. ("TWITTERLAND") is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.   TWITTERLAND operates, maintains and controls an establishment known as CAFÉ BLISS ("BLISS") located at 3465 W. 6th Street, Los Angeles, California 90020, in this district.   BLISS contains and operates karaoke machine(s) on its premises.   TWITTERLAND has a direct financial interest in BLISS.

6.     Defendant JOON YI is, upon information and belief, a resident of Los Angeles County, and the President of TWITTERLAND.   Upon information and belief, JOON YI directs, controls and ratifies the operation and management of TWITTERLAND d/b/a BLISS, and has a direct financial interest in TWITTERLAND d/b/a BLISS.   JOON YI is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

7.     Defendant KOIN ENTERPRISES, INC. ("KOIN") is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Buena Park, California.   KOIN operates, maintains and controls an establishment known as OCTAVE 18 ("OCTAVE") located at 7241 Orangethorpe Avenue, Buena Park, California, 90621, in this district.   OCTAVE contains and operates karaoke machine(s) on its premises.   KOIN has a direct financial interest in OCTAVE.

8.     Defendant SOOHEUM HAN is, upon information and belief, a resident of Orange County, and the President of KOIN.   Upon information and belief, SOOHEUM HAN directs, controls and ratifies the operation and management of KOIN d/b/a OCTAVE, and has a direct financial interest in  KOIN d/b/a OCTAVE. SOOHEUM HAN is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

///

///

9.     Defendant GO GOO RYEO RESTAURANT, INC. ("GO GOO")  is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Garden Grove, California.  GO GOO operates, maintains and controls an establishment known as CLUB ZEUS ("ZEUS") located at 8851 Garden Grove Boulevard, # 106, Garden Grove, California 92844, in this district. ZEUS contains and operates karaoke machine(s) on its premises.  GO GOO has a direct financial interest in ZEUS.

10.     Defendant STELLA S. JUN is, upon information and belief, a resident of Orange County, and the President of GO GOO.  Upon information and belief, STELLA S. JUN directs, controls and ratifies the operation and management of GO GOO d/b/a ZEUS, and has a direct financial interest in GO GOO d/b/a ZEUS. STELLA S. JUN is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

11.     Defendant MH & MK ENTERTAINMENT, INC. ("MH & MK") is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  MH & MK operates, maintains and controls an establishment known as CHERBOURG located at 3624 W. 3rd Street, Los Angeles, California 90020, in this district.  CHERBOURG contains and operates karaoke machine(s) on its premises.  MH & MK has a direct financial interest in CHERBOURG.

12.     Defendant MYUNG HO LEE is, upon information and belief, a resident of Los Angeles County, and the President of MH & MK.  Upon information and belief, MYUNG HO LEE directs, controls and ratifies the operation and management of MH & MK d/b/a CHERBOURG, and has a direct financial interest in MH & MK d/b/a CHERBOURG.  MYUNG HO LEE is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

///

///

13.     Defendant WOON SOOK CHUNG is, upon information and belief, a resident of Orange County, and operates, maintains and controls an establishment known as SENSE RESTAURANT ("SENSE") located at 2871 W. Lincoln Avenue, Anaheim, California 92801.  SENSE contains and operates karaoke machine(s) on its premises.

14.     Upon information and belief, WOON SOOK CHUNG directs, controls and ratifies the operation and management of SENSE, and has a direct financial interest in SENSE.  WOON SOOK CHUNG is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

15.     Defendant SAN CHUN, INC. ("SAN CHUN")  is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  SAN CHUN operates, maintains and controls an establishment known as GO HYANG SAN CHUN ("GO HYANG") located at 345 S. Western Avenue, Los Angeles, California 90020, in this district. GO HYANG contains and operates karaoke machine(s) on its premises.  SAN CHUN  has a direct financial interest in GO HYANG.

16.     Upon information and belief, MUN PARK YONG directs, controls and ratifies the operation and management of SAN CHUN d/b/a GO HYANG, and has a direct financial interest in SAN CHUN d/b/a GO HYANG.  MUN PARK YONG is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

17.     Defendant KONEOUSA, INC. ("KONEOUSA")  is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  KONEOUSA operates, maintains and controls an establishment known as STAR KARAOKE ("STAR") located at 601 S. Ardmore Avenue, Los Angeles, California 90005, in this district.  STAR contains and operates karaoke machine(s) on its premises. KONEOUSA has a direct financial interest in STAR.

18.     Upon information and belief, ERICA JEEYUN KANG directs, controls and ratifies the operation and management of KONEOUSA d/b/a STAR, and has a direct financial interest in KONEOUSA d/b/a STAR. ERICA JEEYUN KANG is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

19.     Defendant IWAN, INC. ("IWAN")  is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  IWAN operates, maintains and controls an establishment known as ASTRO KARAOKE ("ASTRO") which has two locations: a) 2212 Artesia Blvd., Torrance, California 90504 ("Astro Torrance"); and b) 2150-2152 Lomita Blvd., Lomita, California 90717 ("Astro Lomita"), both ASTRO locations are in this district.  ASTRO contains and operates karaoke machine(s) on its premises at both locations. IWAN  has a direct financial interest in ASTRO.

20.     Upon information and belief, SANAE MARUYAMA directs, controls and ratifies the operation and management of IWAN d/b/a/ ASTRO, and has a direct financial interest in IWAN d/b/a ASTRO.  SANAE MARUYAMA is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

21.     Defendant SUGAR K ENTERTAINMENT, INC. ("SUGAR INC.") is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  SUGAR INC. operates, maintains and controls an establishment known as SUGAR ENTERTAINMENT ("SUGAR") located at 2735 W. Temple Street, Los Angeles, California 90026, in this district.  SUGAR contains and operates karaoke machine(s) on its premises. SUGAR INC.  has a direct financial interest in SUGAR.

22.     Upon information and belief, SMITH HO KANG directs, controls and ratifies the operation and management of SUGAR INC. d/b/a SUGAR, and has a direct financial interest in SUGAR INC. d/b/a SUGAR.  SMITH HO KANG is the

moving force behind the infringing activity alleged herein and is personally liable for such infringement.

23.   Defendant ZILLER ENTERPRISES, INC. ("ZILLER INC.")  is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Fullerton, California.  ZILLER INC. operates, maintains and controls an establishment known as ZILLER KARAOKE ("ZILLER") located at 1050 W. Valencia Drive, Fullerton, California 92833, in this district. ZILLER contains and operates karaoke machine(s) on its premises. ZILLER INC. has a direct financial interest in ZILLER.

24.   Upon information and belief, BYUNGGON SEO directs, controls and ratifies the operation and management of ZILLER INC. d/b/a ZILLER, and has a direct financial interest in ZILLER INC. d/b/a ZILLER. BYUNGGON SEO  is the moving force behind the infringing activity herein and is personally liable for such infringement.

25.   Defendant JIA ZEN, INC. ("JIA ZEN.")  is a corporation duly licensed and existing under the laws of the State of California, with its principal place of business in Fullerton, California.  JIA ZEN. operates, maintains and controls an establishment known as SIMPLE KARAOKE ("SIMPLE") located at 3208 W. 8th Street, Los Angeles, California 90005, in this district.  SIMPLE contains and operates karaoke machine(s) on its premises. JIA ZEN has a direct financial interest in SIMPLE.

26.   Upon information and belief, DONG SOO CHO directs, controls and ratifies the operation and management of JIA ZEN d/b/a SIMPLE, and has a direct financial interest in JIA ZEN d/b/a SIMPLE.  DONG SOO CHO is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

27.   All of the aforementioned Defendants, and Doe defendants, when referred to collectively herein, shall be referred to as "Defendants."   The

establishments that contain and operate karaoke machine(s) on their premises, when referred to collectively herein, shall be referred to as "Karaoke Establishments."

28.    All Defendants are joined pursuant to Fed. R. Civ. P. 20(a)(2).

29.    Each of the Defendants publicly performs musical compositions and/or causes musical compositions to be publicly performed in connection with the operation of Karaoke Establishments.

30.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1-20, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities when ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously-named Defendants is responsible in some manner or capacity for the wrongful conduct alleged herein, and that Plaintiff's loss as alleged herein was proximately and/or directly caused by such Defendants' acts.

31.    All of the claims for copyright infringement joined in this Complaint are governed and arise from or relate to the same transaction or occurrence, or series of transactions or occurrences, and one or more  questions(s) of law or fact are common to all the parties.  In particular, Plaintiff alleges that Defendants have infringed Plaintiff's copyrights by performing or causing the performance of Plaintiff's musical compositions without authorization. Thus, joinder of these claims will promote the convenient administration of justice and will avoid a multiplicity of separate, similar actions against Defendants.

## IV

## FACTS COMMON TO ALL CLAIMS

## Elohim EPF, USA, Inc.

32.    Commencing on or about July 1, 2013 and continuing through the present, Elohim has been and continues to be the exclusive "Subpublisher" in the United States and Canada of thousands of well-known and popular Korean music

compositions (for a small number of these songs, Elohim acts as the publisher). These thousands of songs are referred to collectively herein as the "Compositions."

33.     A "Subpublisher" is a term of art in the music publishing industry, which means a person or entity that has received from the copyright owner(s) or various musical compositions a grant of the exclusive right in one (1) or more countries of the world to "Administer" such musical compositions.  In the music publishing industry, a "publisher" differs from a "Subpublisher" in that the copyright owner usually grants the "publisher" the exclusive right to Administer musical compositions throughout the world, whereas a copyright owner usually grants one (1) or more "Subpublishers" the exclusive right to Administer musical compositions for a territory less than the entire world.

34.     "Administer" is a term of art in the music publishing industry which means the right to license and grant all rights in the applicable musical compositions (and their copyrights), and to collect all monies earned in connection with such musical compositions.

35.     Accordingly, pursuant to the terms of the Subpublishing agreements (or in certain specified instances, the publishing agreements) between Elohim and the copyright holders of the Compositions, Elohim registered certain Compositions with the U.S. Copyright Office (hereinafter collectively the "Registered Compositions"). Although Plaintiff contends that Defendants have infringed Plaintiff's rights in all of the Compositions, this lawsuit concerns only the following Registered Compositions:

1.     Hwa (Case No. 1-3910651651)[1];

2.     Ba Daeui Yeoin (Case No. 1-3910651651);

3.     Yeht Sarang (Case No. 1-3910651651);

4.     Sarang Eui Euiji (Case No. 1-3910651651);

5.     Yoksim Upneun Maeum (Case No. 1-3910651651);

[1]/ Songs one through five were registered pursuant to publishing agreements.

6.     Haeng Jin (Case No. 1-1025712461);

7.     Michigetseo (Case No. 1-1025150817);

8.     Jangnan Anya (Case No. 1-1025150817)

9.     Bad Boy (Case No. 1-3396749316)

10.    NumMuri Jururuk (Case No. 1-1025150817)

11.    Bam Ha Neul E (Case No. 1-1025150817)

12.    Jeong Sin I Na Gat Eot Na Bwa (Case No. PA 1-904-034)

13.    Hot Boy (Case No. 1-3374196266)

14.    Il Gi Jang (Case No. 1-3397260545)

15.    To Yo Il Bam E (Case No. 1-3396749291)

16.    Dolgo Dolgo Dolgo (Case No. 1-1025712461)

17.    Bunmyung Ha Ge (Case No. 1-1025712461)

18.    Geok Jeong Mara (Case No. 1-1025712461)

19.    Narang Sagwilrae (Case No. 1-1025150817)

20.    Seul Peun Uem Ak (Case No. SR000073592)

21.    Diva (Case No. 1-3373820967)

22.    Neo Ttae Mun E (Case No. 1-3373820967)

23.    Bingeul Bingeul (Case No. 1-3916873398)

24.    Tteol Eo Jin Da Nun Mool (Case No. 1-337396867)

25.    Superman (Case No. 1-3336625682)

26.    A Ro Ha (Case No. 1-3916873477)

27.    Yak Sok (Case No. 1-3916873566)

28.    Love Again (Case No. 1-3916873615)

29.    For U (Case No. 1-3916873664)

30.    Eol Ssu (Case No. 1-3364876763)

31.    Himeul Naepsi Da (Case No. 1-3916873733)

32.    Ga Ye Wo (Case No. 1-3373968648)

33.    Go Hae (Case No. SR0000740303)

34.   Gin Sang Meo Ri Geu Nyeo (Case No. SR0000733789)

35.   Ma Boy (Case No. SR0000735001)

36.    So Cool (Case No. SR0000735000)

37.   Push Push (Case No. SR0000735000)

38.   Gu Dae Wa Ham Ke (Case No. SR0000734414)

39.   Neo Man Ul Nu Ki Myeo (Case No. SR0000734414)

36.   Elohim is the exclusive owner of the United States copyright in and to the Registered Compositions.

37.   During all periods relevant to this action, Elohim has had and continues to have the exclusive rights in the copyright under the Copyright Act to the Registered Compositions, including a) the exclusive right to reproduce the Registered Compositions in copies or phonorecords (17 U.S.C. § 106(1)); b) the exclusive right to prepare derivative works based on the Registered Compositions (17 U.S.C. § 106(2)); c) the exclusive right to distribute copies or phonorecords of the Registered Compositions in the public by sale, rental, lease or lending (17 U.S.C. § 106(3)); d) the exclusive right to perform the Registered Compositions publicly (17 U.S.C. § 106(4)); and e) the exclusive right to *display* the Registered Compositions publicly (17 U.S.C. § 106(5)).

38.   Within the past three years Defendants have, in the Karaoke Establishments, publicly performed and displayed and/or caused the public performance and display or, the Registered Compositions by means of karaoke machines, video monitors and sound systems.

## **Defendants**

39.   Karaoke, which means "empty orchestra" in Japanese, is a multi-million dollar business.  Karaoke recordings are re-recordings of hit songs with the lead vocal tracks either omitted (instrumental) or sung by sound-alike artists (learning track).  Lyrics are usually displayed on a video screen, along with a moving symbol,

///

changing color, or music video image as a "prompt" to guide the singer in singing-along with the track.

40. According to public records, since on or about April 2016, Defendants have, and continue to, own and operate various so-called "karaoke bars" in the cities of Los Angeles, Anaheim, Garden Grove, Buena Park and Fullerton. Defendants charge customers money for access to the many karaoke machines that Defendants have placed in the Karaoke Establishments described herein. The karaoke machines, and the interaction of the customers with those machines, are the primary features of the experience for which customers pay Defendants. Without karaoke music, Defendants would not be able to operate their businesses *at all*, and would earn no revenue; karaoke music is Defendants' stock-in-trade.

41. Upon entering a Karaoke Establishment, one of Defendants' employees will assign patrons to one of the multiple individual karaoke rooms located therein. In these individual karaoke rooms, Defendants have set up a karaoke machine, video monitor, and sound system (e.g., speakers, amplifier and microphone) such that patrons can access and perform the musical compositions pre-recorded onto the karaoke machines, which compositions include the Registered Compositions. Within each room there is also a binder that lists all of the karaoke musical compositions (i.e., songs) by name and number, for selection by customers, and which include the Registered Compositions. After a patron selects a certain musical composition, the instrumental music for the composition is played over the sound system, while concurrently a video monitor displays the lyrics for the musical composition so that the patron can sing along.

42. A fundamental legal requirement for publicly performing copyrighted musical compositions embodied in karaoke recordings is a license granting the right of public performance, which must be obtained from the owner and/or administrator of the copyright of the musical compositions to be performed. In addition, the public visual display of song lyrics on the video monitors of the karaoke machines enjoys

independent copyright protection, and thereby requires a separate license granting the right of display, which must also be obtained from the owner and/or administrator of the musical compositions.

43.     Here, Plaintiff has not granted Defendants the right to publicly perform or publicly display any of the Compositions.  Moreover, Defendants have known that their continued public performance and public display of each of the Compositions constituted copyright infringement prior to the initiation of this action because Plaintiff sent cease and desist letters to Defendants. In addition, Plaintiff has made public announcements regarding such infringing conduct by Karaoke Establishments in order to educate them about such infringement, and urge them to stop, or acquire appropriate licenses. Thus, despite Defendants' knowledge that they lacked authorization to publicly perform or publicly display the Compositions, Defendants knowingly, willfully and intentionally continued their extensive use of each of the Compositions in their respective Karaoke Establishments and failed to pay Elohim for the right to publicly perform and publicly display each of the Compositions as required by 17 U.S.C. §§ 106(4) and (5).

## FIRST CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT
### (Against All Defendants)

44.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 43, hereinabove, inclusive, as though set forth at length herein.

45.     As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

///

46.     Since the inception of the Karaoke Establishments, Defendants have publicly performed and publicly displayed, and/or caused or authorized the public performance and public display, of each of the Registered Compositions by means of one or more karaoke machines and through elaborate and expensive sound systems and video monitors.  Each of the public performances and public displays of the Compositions has been conducted without a license or authorization from Plaintiff.

47.     Thus, Defendants have knowingly and intentionally authorized, caused, and engaged in the unlicensed public performance and public display of each of the Registered Compositions in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(4) and (5).

48.     On information and belief, Defendants' unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting each specific instance of infringement is impossible.

49.     Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of direct copyright infringement.

50.     Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of direct copyright infringement.

51.     The specific acts of copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.   By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants  threaten to continue committing copyright infringement on essentially a daily basis.  Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

///

52.     Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

53.     Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' direct infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions infringed.   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

54.     Plaintiff is also entitled to recovery attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## SECOND CLAIM FOR RELIEF FOR
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against All Defendants)

55.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 54, hereinabove, inclusive, as though set forth at length herein.

56.     As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

57.     Defendants charge patrons money to access the karaoke machines that Defendants have placed in the Karaoke Establishments.  Patrons pay Defendants an hourly rate for access to one of Defendants' rooms, wherein patrons are provided the opportunity and ability to cause the public performance and public display of each of the Registered Compositions without a license.  The sole purpose of the individual rooms is to provide patrons with a space to publicly perform and publicly display

musical compositions (including the Registered Compositions) in the karaoke machines, and to charge patrons for such use.

58.   By providing patrons the space and ability (i.e., by furnishing the individual rooms with a karaoke machine, video monitor and sound system to play recordings of the musical compositions and display their lyrics) to publicly perform and to publicly display each of the Registered Compositions, Defendants have knowingly and systematically induced, caused, materially contributed to and participated in the infringing activity.

59.   Furthermore, as sophisticated business owners, Defendants know that they must have a license for the public performance and public display of the musical compositions in the karaoke machines that Defendants have on their premises.  Prior to this litigation, Defendants were in receipt of, and/or were aware of, cease and desist letter(s) and/or public announcements/press releases warning Karaoke Establishments to secure the proper licensing for the karaoke machines and musical compositions thereon, particularly a license for the Compositions (which include the Registered Compositions).

60.   By knowingly providing patrons unfettered access to publicly perform and publicly display each of the unlicensed Registered Compositions, Defendants have engaged in contributory copyright infringement.   Despite Defendants' knowledge that they lacked authorization to publicly perform and to publicly display each of the Compositions, Defendants knowingly, willfully and intentionally continued to induce, cause or materially contribute to the infringement of Plaintiff's rights by holding themselves out as a "karaoke-bar" and providing patrons of the Karaoke Establishments with individual rooms equipped to publicly perform and display each of the Registered Compositions in violation of Plaintiff's rights under Sections 105(4) and 106(5) of the Copyright Act.

///

///

61.     On information and belief, Defendants' contributory unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

62.     Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of contributory copyright infringement.

63.     Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of contributory copyright infringement.

64.     Defendants' conduct has been and continues to be intentional, willful, and with full knowledge of Plaintiffs' rights in each of the Registered Compositions, and the contributory infringement thereof.

65.     The specific acts of contributory copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.  By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants  threaten to continue committing copyright infringement on essentially a daily basis.  Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

66.     Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

67.     Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' contributory infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b),

Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

68.    Plaintiff is also entitled to recovery attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## THIRD CLAIM FOR RELIEF FOR
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against All Defendants)

69.    Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 68, hereinabove, inclusive, as though set forth at length herein.

70.    As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

71.    Defendants charge patrons money to access the karaoke machines that Defendants have placed in the Karaoke Establishments.  Patrons pay Defendants an hourly rate for access to one of Defendants' rooms, wherein patrons are provided the opportunity and ability to cause the public performance and public display of each of the Registered Compositions without a license.  The sole purpose of the individual rooms is to provide patrons with a space to publicly perform and publicly display musical compositions (including the Registered Compositions) in the karaoke machines, and to charge patrons for such use.  In turn, Defendants have a direct financial interest in their patrons' unlawful public performance and public display of each of the Registered Compositions, as Defendants receive income directly from such use.

///

///

72.     Defendants have absolute control over the use of the karaoke machines on their premises, as well as their patrons' access so such karaoke machines and individual karaoke rooms.  Thus, Defendants have the right and ability to supervise, control and stop the unlicensed public performance and unlicenced public display of each of the Registered Compositions by Defendants' patrons.

73.     As sophisticated business owners, Defendants know that they must have a license for the public performance and public display of the musical compositions in the karaoke machines that Defendants have on their premises.  Furthermore, prior to this litigation, Defendants were in receipt of, and/or were aware of, cease and desist letter(s) and/or public announcements/press releases warning Karaoke Establishments to secure the proper licensing for the karaoke machines and musical compositions thereon, particularly a license for the Compositions (which include the Registered Compositions).

74.     By knowingly providing patrons unfettered access to publicly perform and publicly display each of the unlicensed Registered Compositions, and charging patrons for such use, Defendants profit from the direct infringement of Plaintiff's rights and thereby have engaged in vicarious copyright infringement.  Despite Defendants' knowledge that they lacked authorization to publicly perform and to publicly display each of the Compositions, Defendants knowingly, willfully and intentionally continued to profit from such use and knowingly failed to stop it, notwithstanding their right and ability to supervise the infringement in violation of Plaintiff's rights under Sections 105(4) and 106(5) of the Copyright Act.

75.     Since the inception of the Karaoke Establishments, Defendants have knowingly supervised and had a direct financial interest in the unauthorized public performance and unauthorized public display of each of the Registered Compositions.  On information and belief, Defendants' contributory unlawful conduct has continued since the inception of the Karaoke Establishments on a

///

nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

76.     Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of vicarious infringement.

77.     Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of vicarious infringement.

78.     Defendants' conduct has been and continues to be intentional, willful and with full knowledge of Plaintiff's rights in each of the Compositions, and the vicarious infringement thereof.

79.     The specific acts of vicarious copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.  By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants  threaten to continue committing copyright infringement on essentially a daily basis.  Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

80.     Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

81.     Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' vicarious infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

82.     Plaintiff is also entitled to recovery attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## FOURTH CLAIM FOR RELIEF FOR
## INDUCING COPYRIGHT INFRINGEMENT
### (Against All Defendants)

83.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 82, hereinabove, inclusive, as though set forth at length herein.

84.     As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

85.     Defendants charge patrons money to access the karaoke machines that Defendants have placed in the Karaoke Establishments.  Patrons pay Defendants an hourly rate for access to one of Defendants' rooms, wherein patrons are provided the opportunity and ability to cause the public performance and public display of each of the Registered Compositions without a license.  The sole purpose of the individual rooms is to provide patrons with a space to publicly perform and publicly display musical compositions (including the Registered Compositions) in the karaoke machines, and to charge patrons for such use.

86.     By providing patrons the space and ability (i.e., by furnishing the individual rooms with a karaoke machine, video monitor and sound system to play recordings of the musical compositions and display their lyrics) to publicly perform and to publicly display each of the Registered Compositions, Defendants actively promote, encourage and induce their patrons to infringe Plaintiff's rights in each of the Registered Compositions.

87.     Furthermore, as sophisticated business owners, Defendants know that they must have a license for the public performance and public display of the musical compositions in the karaoke machines that Defendants have on their premises. Furthermore, prior to this litigation, Defendants were in receipt of, and/or were

aware of, cease and desist letter(s) and/or public announcements/press releases warning Karaoke Establishments to secure the proper licensing for the karaoke machines and musical compositions thereon, particularly a license for the Compositions (which include the Registered Compositions).

88.     On information and belief, Defendants' contributory unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

89.     Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of inducing copyright infringement.

90.     Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of inducing copyright infringement.

91.     Defendants' conduct has been and continues to be intentional, willful and with full knowledge of Plaintiff's rights in each of the Compositions, and the inducement of infringement thereof.

92.     The specific acts of vicarious copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.  By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants  threaten to continue committing copyright infringement on essentially a daily basis.  Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

93.     Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

94.     Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' vicarious infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

95.     Plaintiff is also entitled to recovery attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

**On the First Claim for Direct Copyright Infringement against all Defendants:**

A.     For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

B.     For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

C.     For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

D.     For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

E.     For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies or enabling performance or display of the Registered Compositions;

F.      For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**On the Second Claim for Contributory Copyright Infringement against all Defendants:**

A.      For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

B.      For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

C.      For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

D.      For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

E.      For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies or enabling performance or display of the Registered Compositions;

F.      For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**On the Third Claim for Vicarious Infringement against all Defendants:**

A.      For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

B.      For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

C.     For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

D.     For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

E.     For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies or enabling performance or display of the Registered Compositions;

F.     For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**On the Fourth Claim for Inducing Infringement against all Defendants:**

A.     For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

B.     For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

C.     For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

D.     For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

E.     For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered

Compositions, including all equipment containing copies of or enabling performance or display of the Registered Compositions;

F.    For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**<u>On All Claims for Relief:</u>**

A.    For costs of suit incurred herein;

B.    For prejudgment interest at the legal rate; and

C.    For such other and further relief as the Court deems just and proper.

DATED: October 20, 2016    TESSER RUTTENBERG & GROSSMAN LLP
BRANDON M. TESSER
BRIAN M. GROSSMAN


    /s/ Brandon M. Tesser
BRANDON M. TESSER
Attorneys for Plaintiff
ELOHIM EPF USA, INC.
E-mail: btesser@trgllp.com

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims for relief which may be tried to a jury.

DATED: October 20, 2016          TESSER RUTTENBERG & GROSSMAN LLP
                                 BRANDON M. TESSER
                                 BRIAN M. GROSSMAN


                                   /s/ Brandon M. Tesser
                                 BRANDON M. TESSER
                                 Attorneys for Plaintiff
                                 ELOHIM EPF USA, INC.
                                 E-mail: btesser@trgllp.com